### MILWEE v. JAY.

1. STATUTE OF LIMITATIONS—PROMISE.—Where the statutory period, counting from the original accrual of the cause of action, expired before the commencement of the suit, a promise shown for the purpose of opposing the plea of the statute, is itself the true cause of action, and the statute of limitations in force at the time of the promise applies.

2. IBID.—EXECUTOR—ESTATE.—An executor has no power to create a debt against the estate of his testator by making a payment on a note which is barred by the statute of limitations, and which was not shown to have been a contract of his testator.

3. STATUTE OF FRAUDS—PROMISE.—A verbal promise to pay the debt of another, or the payment of money on the debt of another, cannot bind such payer to pay the debt, because contrary to the statute of frauds.

4. IBID.—CODE, 131.—The words, "payment of any part of principal or interest is equivalent to a promise in writing" (Code, 131), does not refer to the statute of frauds. Code, 131, *construed*.

5. THE LETTERS introduced in this case construed not to amount to a new promise to pay the debt sued on.

Before BENET, J., Abbeville, October, 1895. Affirmed.

Action by M. C. Milwee against David W. Jay, in his own right, and as surviving partner of the late firm of Bradley & Jay, and John E. Bradley, R. F. Bradley, W. T. Bradley, S. F. Bradley, Thomas P. Thomson, and George C. Bradley, as executors of the last will and testament of William K.

Bradley, deceased, upon sealed note. After close of plaintiff's testimony, the presiding Judge granted a nonsuit, and signed the following order:

This is an action upon a sealed note, signed Bradley & Jay, dated July 31, 1873, due one day after date, for $250, with interest at twelve per cent. per annum. Upon it various payments are alleged to have been made, viz: July 7, 1874, $25; May 11, 1880, $5; January 8, 1883, $400, and January 7, 1889, $5. The first two payments are alleged to have been made by Bradley & Jay. The third by D. W. Jay and the executors of W. K. Bradley, deceased. The fourth by the executors. The only witness offered by plaintiff was Dr. W. B. Milwee, husband of plaintiff, who testified that J. E. Bradley, one of the executors, made the payment of $400 January 8, 1883, and also that of January 7, 1889. No other evidence than the endorsements on the note was offered as to the first two payments. The defendants, in their answer, admit that the first two payments were made by D. W. Jay; allege that the third payment was also made by Jay, and deny the alleged payment of January 7, 1889. The action on the sealed note being barred at the time this action was commenced, January 6, 1895, it is sought to be sustained on the new promise evidence by the several payments above stated, and certain acknowledgments by the defendants. These alleged acknowledgments are contained in letters written by the defendants to plaintiff, or her agent, Dr. Milwee. The first is a letter from W. T. Bradley, one of the executors, dated in November, 1893, urging Mrs. Milwee to enforce collection against the business of Bradley & Jay. Next is a letter of December 5, 1893, from Jay to Dr. Milwee, acknowledging that he made the first three payments above stated, and closing with the expression: "I hope we can agree on settlement of note soon." Next is a letter of January 4, 1894, from D. W. Jay to Milwee, repudiating his liability on the note by reason of the statute of limitations. I will consider first what statute is applicable to the several alleged new promises—the twenty

year limitation in force at the date of the sealed note or the six year limitation fixed by the act of November 25th, 1873? If the action had been upon the sealed note, I should have no hesitation in saying that the twenty year limitation would apply, for the Code expressly excepts cases where the right of action has already accrued; but the action upon the note is barred, and it can be sustained, if at all, only upon the new promise as an original, substantive, independent contract. The original note, so far as this action is concerned, simply furnishes evidence of consideration for the new promise. The cause of action, the breach of the new promise, having arisen subsequent to the act of November, 1873, the right of action necessarily had not accrued at the time of its passage, and consequently the action upon the new promises are not within the exceptions stated in the Code. The statute of limitations is no part of the contract, it is the *lex fori*, a part of the remedy, and as such within the control of the legislature, and applicable as well to antecedent contracts as to subsequent ones. I hold, therefore, that each of the alleged new promises is subject to the six year limitation prescribed by the act of 1873. This being the case, the action is barred as to each of the new promises evidenced by payments except as to the payment made by J. E. Bradley of January 7, 1889. There is nothing in the letters introduced in evidence to cause me serious concern as to their effect in repelling the bar of the statute, except the letter of D. W. Jay of December 5, 1893. It will be observed that this alleged acknowledgment was made after the bar was complete, both as to the action upon the last payment made by Jay of January 8, 1883, and upon the note. It has been uniformly held ever since *Young* v. *Monpoey*, 2 Bail., 278, that after the bar is complete, an acknowledgment to toll the statute must be a distinct, unequivocal, unqualified acknowledgment of the debt as a subsisting obligation on the part of the debtor. While this letter acknowledges that the defendant, Jay, made the payments stated, it is qualified by the expression, "I hope we can agree upon set-

tlement of the note soon." So far from being an acknowledgment of a definite and determinable debt, the expression imports the contrary—a want of agreement as to the amount to be paid, and hence does not repel the bar of the statute. There is nothing else in the testimony that can repel the bar of the statute, so far as D. W. Jay is concerned. As to the executors, the letters introduced are insufficient to repel the bar of the statute. The witness, Milwee, testifies that he held two notes, one against J. E. Bradley individually and the one in this suit; that he met J. E. Bradley on the street and told him that he wanted a payment on the note his wife held against Bradley & Jay, to keep it from going out of date, whereupon J. E. Bradley handed him $5; this was on 7th January, 1889. I think, when it is sought to create a new promise, or to make a contract to bind an estate by an executor, it must be shown that the payment was made by him as executor, and upon a debt of the testator, which he was bound as executor to pay. This the plaintiff has failed to show. Even if it should appear positively that on January 7, 1889, J. E. Bradley, as executor, made this payment of $5 on the Bradley & Jay note, I should hold that it would be insufficient to toll the statutes. An executor has no power to create an obligation against his testator's estate. The nonsuit should, therefore, be granted, and it is so ordered.

The plaintiff appeals on the following exceptions:

I. Because there was sufficient testimony to go to the jury, and it was error to grant the nonsuit.

II. Because it was error to hold that the act of 1873 governed the case, when it is respectfully submitted that the case is controlled by the statue of limitations of 1870.

III. Because it was error to hold that the letters introduced in evidence by the plaintiff were not sufficient to charge the defendants under a new promise.

IV. Because it was error to hold that the payment of $5

by one of the executors of January 7th, 1889, was not suffi-
cient evidence of a new promise to go to the jury.

V. Because it was error to hold that an executor could
not charge his testator's estate by making a payment on a
note of said testator.

VI. Because it was error not to hold that by making the
payment of January 7th, 1889, the executors bound them-
selves personally, even if it was not sufficient to bind the
estate.

VII. Because it was error in his Honor to hold that the
plaintiff had failed to prove that the payment was made by
J. E. Bradley, as executor, and upon a debt of his testator
which he was bound as executor to pay, there being sufficient
evidence on all of those points to go to the jury.

VIII. Because his Honor erred in holding that the letter
of D. W. Jay of December 5th, 1893, was not a sufficient ac-
knowledgment to take the case out of the statute of limita-
tions.

*Messrs. Graydon & Graydon,* for appellant, cite: *Stat.
of Lim.:* Code of 1870, sec. 112, 133; 2 McC., 419; 1 Rich.
L., 391; 1 Bay, 482; 1 Mill, 178; 1 McC. L., 145; 1 Bail.
L., 148; 1 Hill Ch., 380. *Promise:* 2 Bail., 278; Harper,
305; Bail. Eq., 311; Dudley L., 365; 11 Rich. L., 178; 13
S. C., 328.

*Messrs. Cothran, Perrin & Cothran,* contra, cite: Stat. of
Lim., 20 S. E. R., 25; 9 S. C., 450; 23 S. C., 580; 33 S. C.,
508; 15 Rich., 365; 38 S. C., 307. *Payment by Executor:*
33 S. C., 505; 1 Brev., 531; 1 McC., 175; 2 N. & McC., 328;
11 Rich., 410; 24 S. C., 200; 16 S. C., 213; 23 S. C., 580;
12 Wh., 565; 7 A. & E. Ency., 283, 299; 1 Wh., 1 (Pa.), 66;
7 Wall., 420; 35 Pa. St. R., 259; 20 Me., 21; McM. Eq., 332;
3 Brev., 312; 26 S. C., 415; Riley, 159; Bail. Eq., 199; 13
S. C., 335; 1 Brev., 531; 1 Rich., 9. *Payment Binding
Personally:* Rev. Stat., 2151; Brown Stat. Fr., sec. 186.
*Promise:* 122 U. S., 231; 38 S. C., 306; 13 S. C., 40; 6
Rich., 117; 6 Pet., 93; 1 Rich., 210; 1 McM., 200; 4 Strob.,

95; Dudley, 365; 2 McM., 505; Riley, 246; Wood, 157; 13 A. & E. Ency., 755; 136 Mass., 326; 7 Wend., 367; 104 Pa. St., 356; 70 Tex., 740; 49 Wis., 94; 5 S. E. R., 174; 1 McM., 197; 21 S. C., 600; 2 Hill, 326; 5 S. E. R., 630; 7 Wend., 267; 2 H. & N., 195; 15 S. E. R., 154.

Aug. 1, 1896.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   For a proper understanding of the questions raised by this appeal, it will be necessary to make a somewhat fuller statement of the pleadings in this action, which was commenced on the 15th of January, 1895, than is usual in cases like this.   The plaintiff, in the first paragraph of her complaint, alleges that on the 31st of July, 1875 (which is manifestly a misprint for 1873), the testator, William K. Bradley, and the defendant, David W. Jay, were doing business as partners in trade under the firm name of Bradley & Jay.   In the second paragraph, the allegation is, that on the 31st day of July, 1875 (again manifestly a misprint for 1873), the said Bradley & Jay made and delivered to one A. L. McCaslan their note under seal, whereby they promised to pay said A. L. McCaslan or bearer, one day after said date, the sum of $250, interest at the rate of twelve per centum per annum.   In the third paragraph, plaintiff alleges that on the 7th day of July, 1874, the said Bradley & Jay made a new promise to pay the amount specified in said note, by paying to the plaintiff the sum of $25, and having the same credited on said note.   In the fourth paragraph, the allegation is, on the 11th of May, 1880, the said Bradley & Jay made a new promise to pay what was due on said note, by paying to the plaintiff the sum of $5, and having the same credited on said note.   In the fifth paragraph, the allegation is that the said William K. Bradley, some time during the year 1882, died, leaving a will by which the defendants, named as such, were appointed the executors thereof; and in the sixth paragraph, it is alleged that the persons named as such duly qualified as executors of the will of the said William K. Bradley.   In the seventh

paragraph, it is alleged that on the 8th of January, 1883, the said defendants made a new promise to pay to the plaintiff the amount due on said note, by paying to the plaintiff the sum of $400, and having the same credited on the said note. The allegation in the eighth paragraph is that on the 7th day of January, 1889, the defendants, named as executors of the will of Wm. K. Bradley, made a new promise to pay what was due on said note to the plaintiff, by paying to the plaintiff the sum of $5, and having the same credited on the said note. In the ninth paragraph, it is alleged that the defendant, David W. Jay, on the 5th of December, 1883, made an acknowledgment in writing that the debt evidenced by said note was due. In the tenth paragraph, the allegation is that said David W. Jay, on the 4th of January, 1894, made a similar acknowledgment in writing. In the eleventh paragraph, it is alleged that on the 24th day of November, 1893, the defendants, named as executors, made a similar acknowledgment in writing. In the twelfth paragraph, it is alleged that the plaintiff is now the legal owner and holder of said note, and that no part thereof has been paid except as above stated.

To this complaint, the defendant, David W. Jay, and the executors of Wm. K. Bradley, filed separate answers, but as they set up the same defenses, the answer of Jay is the only one set out in the "Case." In that answer, the allegations made in the first, fifth, and sixth paragraphs of the complaint are admitted; but as those allegations relate only to the partnership formerly existing between W. K. Bradley and David W. Jay, to the death of Bradley, and the appointment and qualification of his executors, they have no bearing upon the points raised by this appeal. In the second paragraph of the answer, all the other allegations of the complaint are distinctly denied. The third paragraph of Jay's answer is in these words: "That the note referred to in the complaint was a sealed note, signed in the firm name by the defendant, D. W. Jay, without previous authority or subsequent ratification on the part of W. K.

Bradley, and was at no time binding upon any one but the defendant, D. W. Jay, in his individual capacity." In the fourth paragraph of the answer, it is alleged that the payment on said note referred to in the third paragraph of the complaint, was made by the defendant, D. W. Jay. In the fifth paragraph of the answer, the same allegation is made as to the payment referred to in the fourth paragraph of the complaint. In the sixth paragraph of the answer, a similar allegation is made as to the payment referred to in the seventh paragraph of the complaint. The answers set up, as a defense to each and all of plaintiff's alleged causes of action, the statute of limitations. The answers also set up as a defense, by way of counter-claim, certain demands in the form of open accounts existing in favor of Bradley & Jay against A. J. McCaslan, the payee of the note above referred to, before and at the time he transferred said note to plaintiff but; as these matters do not seem to affect the points raised by this appeal, they need not be further referred to.

The note above referred to, upon which the several payments referred to in the complaint were endorsed, was offered in evidence, but there was no testimony tending to show who signed the name of Bradley & Jay to that note, nor was there any testimony adduced tending to show that W. K. Bradley had ever, in any way, either recognized or affirmed or ratified the contract purporting to have been made by said note, nor to show that the proceeds of such note ever enured to the benefit of W. K. Bradley, of Bradley & Jay. What such note was given for, or by whom it was made, is not disclosed by the testimony, except that Jay, in his answer, says that he signed the name of Bradley & Jay to the note; but at the same time he says that he did so "without previous authority or subsequent ratification on the part of W. K. Bradley, and it was at no time binding upon any one but the defendant, D. W. Jay, in his individual capacity."

The only witness introduced by the plaintiff was Dr. W. B.

Milwee, the husband of the plaintiff, and his testimony is set out at length in the "Case," but it is too long for insertion here; and, indeed, under the view which we take of the case, we do not regard his testimony as material. Plaintiff introduced certain letters of D. W. Jay and W. T. Bradley, as evidence of the several acknowledgments referred to in the ninth, tenth, and eleventh paragraphs of the complaint, and for the same purpose, against the objection of defendants, was permitted to introduce a letter of J. E. Bradley, which was not referred to in the complaint.

The case was heard by his Honor, Judge Benet, who, at the close of the testimony on behalf of the plaintiff, granted a motion for a nonsuit, by an order which is set out in the "Case," which should be incorporated in the report of this case. From this order plaintiff appeals upon the several grounds set out in the record, which should likewise be incorporated in the report of this case.

We do not propose to consider these grounds *seriatim*, but will rather proceed to consider and determine what we regard as the controlling questions presented by the appeal. If the plaintiff's cause of action in this case should be regarded as the breach of the promise evidenced by the note under seal, then the action would be clearly barred by the statute of limitations. For, as the law stood at the time when such promise was made—31st of July, 1873—an action for the breach of a promise, evidenced by a note under seal, was barred if not commenced within twenty years after the right of action accrued (Code of 1870). Now, in this case, the right of action for the breach of the promise evidenced by the note, manifestly accrued in August, 1873, the amount mentioned in the note being payable one day after the date thereof—31st July, 1873—and such an action was barred in August, 1893, more than a year before this action was commenced, and hence, beyond all question, the plea of the statute of limitations was a bar to the action for the breach of the promise evidenced by the note. If, however, this action should be regarded, as was

doubtless intended, as an action on the new promises, implied by the several payments set out in the complaint, or by the alleged acknowledgments therein set out, then it becomes necessary to inquire whether the action was barred by the statute on any or all of the new promises implied by such payments or acknowledgments. First, as to the payments, it will be observed that all of these payments were made after the amendment of the original Code of 1870 by the act of 25th November, 1873 (the first of these payments having been made on the 7th of July, 1874), whereby the period within which an action for a breach of promise, evidenced by a note under seal, was reduced from twenty to six years; and as none of these payments, except the last, are alleged to have been made within six years before the commencement of this action, it is quite manifest that the action, if regarded as based upon any of the new promises, except the last, which will hereinafter be separately considered, would be barred by the statute of limitations. It is quite true, that under some of the former decisions in this State, which have been cited by counsel for appellants, in which, as was afterwards shown, an incorrect view of the statute of limitations had been taken, the result above announced might have been doubted; but since the leading case of *Smith* v. *Caldwell*, 15 Rich., 365, in which the law upon the subject was reviewed and certain definite principles were distinctly laid down, followed by *Walters* v. *Kraft*, 23 S. C., 578; *Fleming* v. *Fleming*, 33 S. C., 505; *Sepaugh* v. *Smith*, 35 S. C., 613; and *Park* v. *Brooks*, 38 S. C., 300, and recognized in many other cases, it must now be regarded as the settled law of this State: "That where the statutory period, counting from the original accrual of the cause of action, expired before commencement of the suit, a promise shown for the purpose of opposing the plea of the statute, is itself the true cause of action; and this, whether such promise was made before or after the expiration of the period just mentioned. If before, the legal ability was its consideration; if after, the moral obligation." This

later and more correct view of the statute of limitations was not only in strict conformity to the express language of the statute, as found in the old statute as well as in our Code, but was imperatively demanded by the express terms of the statute, as shown in *Walters* v. *Kraft, supra*, at pages 580–1. If, then, the action must be regarded as an action for the breach of the new promise implied from the payment, without any reference whatever to the original promise evidenced by the note, except for the purpose of finding a consideration for the new promise (*Hayes* v. *Clinkscales*, 9 S. C., 450; *Fleming* v. *Fleming, supra*), then the inquiry would be, when did the right of action accrue for the breach of such new promise? and if the action was not commenced within six years thereafter, as it was not, it would be barred by the statute, for two reasons: 1st. Because by the express term of the act of 25th November, 1873, passed before such new promise was made, and, of course, before any breach thereof, and hence before the right of action accrued, the statutory limit was reduced to six years, even if the new promise had been made under seal. 2d. Because such new promise was not under seal, but a mere simple contract, upon which the action would be barred in six years, even under the original Code of 1870. From these views, it follows that if the action be considered as an action upon either one of the new promises, implied by the first three payments, it must be held barred by the statute of limitations, which was pleaded to each one of those causes of action, as against all of the defendants.

We come next to the consideration of the effect of the payment alleged to have been made by the executors of William K. Bradley, on the 7th of January, 1889, which stands upon a different footing, as that payment was alleged to have been made within six years before the commencement of this action—the action having been commenced on the 5th of January, 1895, two days before the expiration of the six years. As we have seen, the allegation in the complaint in respect to this pay-

ment was distinctly denied in the answer, and the only evidence adduced to prove this allegation was the testimony of Dr. Milwee, the husband of the plaintiff, in which he says that the payment was made by John E. Bradley, one of the executors; and although his testimony as to the fact that such payment was made by John E. Bradley, as *executor*, is somewhat indefinite and shadowy, yet we will assume, for the purpose of the inquiry, that there was some testimony tending to show that the payment was intended to be made and was made for the estate of W. K. Bradley. But even this assumption is very far from authorizing the inference that any liability was thereby created against the estate. It is too well settled to need the citation of authority, that an executor has no power to create a debt against the estate of his testator. To bind the estate of the testator it would have been necessary to show that the debt, upon which such payment was made, was a subsisting valid obligation of the testator, and of this there was not a particle of evidence. The original note, though signed with the name of Bradley & Jay, a firm of which Bradley seems to have been a member, being under seal, was not legally binding upon any one except the person who signed the firm name (*Sibley* v. *Young*, 26 S. C., 415), unless it be shown that the other partner had previously authorized or subsequently ratified such signature, and of this there was no evidence whatever. Indeed, although the testator, W. K. Bradley, lived for about nine years after the execution of the note, there was no evidence even tending to show that W. K. Bradley ever knew or had even ever heard of such a note. So that it is quite clear that, under the evidence in this case, it cannot be held that W. K. Bradley ever was liable on the note. If, therefore, John E. Bradley had, at the time this payment was made, undertaken, in the most explicit terms, to fix upon the estate of his testator a liability for the amount of the note, he would have been powerless to do so.

It was contended, however, in the argument here, that

even if John E. Bradley, by this payment, failed to fix any liability upon the estate of his testator, yet he did thereby create a liability upon himself personally. There are at least two conclusive answers to this position. 1st. The plaintiff, neither by her complaint nor by her evidence, makes any such case against John E. Bradley personally. On the contrary, both by her complaint and by her evidence, the plaintiff distinctly negatives any such claim against John E. Bradley personally. 2d. But in addition to, and aside from this, the statute of frauds presents an insuperable bar to any such claim. It is not pretended, and cannot be pretended, that John E. Bradley ever was personally liable for the amount mentioned in the note; and if he had made verbally the most explicit and unequivocal promise to pay the amount secured by that note, it would have been a promise to pay the debt of another, against which the statute of frauds would have been a complete protection, unless such promise had been in writing, signed by him. It is insisted, however, that the change in the phraseology of the statute effected by the act of 1882, whereby it is declared that "payment of any part of principal or interest is equivalent to a promise in writing," meets this objection. We cannot accept any such construction of the statute, for the language above quoted is taken from the latter part of section 131 of the Code, in the previous portion of which the general declaration is made that no promise or acknowledgment shall be sufficient to take a case out of the operation of the statute of limitations unless the same be in writing; and the sole object of the language quoted was to qualify this general declaration. It certainly was not intended to operate as a repeal of any portion of the statute of frauds, which is in no way alluded to, either in the section from which the quotation is taken or in the title in which the section is found. The construction contended for would lead to this extraordinary (to use no harsher term) result, that if a friend from pure motives of kindness, should make a payment of

$5 on the note of another for $1,000, he would thereby render himself liable for the whole amount of the note.

It only remains to consider the effect of the so-called written acknowledgments contained in the letters offered in evidence.    So far as the acknowledgments alleged. to have been made in the letter of 24th of November, 1893, from W. T. Bradley to the plaintiff, is concerned, that is disposed of by what we have already said in considering the effect of the payment alleged to have been made by the executors on the 7th of January, 1889.    If, as we have seen; the executors had no power to create a debt against the estate of their testator, for which there is not the slightest evidence that the testator ever was liable, surely no acknowledgment by the executors of any such so-called debt, even if made in the most explicit terms, could fix upon the estate of the testator any legal liability.    Besides ,the terms of that letter, so far from showing any acknowledgment of liability on the part of the estate, rather shows the contrary.

We will next consider the effect of the letters of the defendant, D. W. Jay, to Dr. W. B. Milwee, the first dated 5th of December, 1893, and the second bearing date 4th January, 1894.    In the first of these letters, Jay, after saying that he had seen a copy of the note with the credits endorsed, proceeds as follows: "I made payment July 7, 1874, $25; I made payment May 11, 1880, $5; I had J. E. B. make payment January 8, 1883, $400.    Please let me know who made payment January 7th, 1889, $5, as I see there is one of that date.    I received yours of 25th November; I hope we can agree on a settlement of the note soon." How this language can be construed as such an explicit acknowledgment as would imply a promise to pay the balance on the note, it is difficult to conceive.    Although Jay, when he wrote this letter, had before him a copy of the note with all the credits endorsed, from which it would be a very simple matter of calculation to ascertain the balance due, *if there were no other element to be considered*, yet, in-

stead of making any acknowledgment that the balance thereon was due, or any promise to pay the same, says: "*I hope we can agree on settlement of note soon.*" If the balance were admitted, as could be shown by a simple calculation, why should Jay express *a hope* that they could *agree on a settlement?* Did not this necessarily imply that there were other elements to be considered, upon which Jay expressed the hope that they might agree? And that there were such other elements, is distinctly shown by the terms of the second letter—4th of January, 1894—in which Jay uses this language: "You see from W. T. Bradley's letter to me, that the note Cousin Patie [the plaintiff] holds against Bradley & Jay is invalidated by the last credit it has on it. As Uncle Aleck McCaslan's heirs set me a precedent (but one to carry out only with them), 'not to pay if invalidated by lapse of time or otherwise,' I claim invalidity of the A. L. McCaslan note, and am not willing to pay it. I would be pleased to have you come down, and let us talk the matter over. You may not know anything about Uncle Aleck's heirs and my troubles, as this all took place, I think, before you entered the family. Cousin Patie can tell you, if you wish to know. I only say from my reckoning, at Uncle Aleck's death there was but little due either way, including this note." Surely this letter contains no acknowledgment of any balance due on the note, from which any promise to pay the same could be implied; and, on the contrary, it shows that Jay distinctly repudiated any liability on the note. The most that can be said as to these two letters, whether considered separately or together, is, that Jay was willing to come to a settlement, provided certain claims which he held against McCaslan (the payee of the note), which, it seems, had been repudiated by the heirs of McCaslan as barred by the statute of limitations, should be brought into the settlement. It is very clear that these two letters, whether considered together or separately, furnish no evidence of any such acknowledgement of the balance apparently due on the note, as would imply a promise

to pay the same; but, on the contrary, these letters only show a willingness on the part of Jay to come to a full and fair settlement of *all* the transactions with McCaslan, the payee of the note, which, being under seal, and, therefore, not negotiable, was subject to any defenses which could be interposed against the original payee.

We are unable, therefore, to discover any error upon the part of the Circuit Judge in granting the motion for a nonsuit.

There is another letter which has been commented on in the argument here, and which ought, perhaps, to receive some notice. That is a letter from the defendant, J. E. Bradley, to the plaintiff, bearing date 23d September, 1882, in which the writer, after saying that he knew but little about the matter, and that those of the family with whom he had conferred were willing to do what is right in the case, he uses this expression: "The estate will shoulder its part of the note without any litigation." When that letter was offered in evidence, defendant's counsel objected to its admissibility, but the objection was overruled, and the letter was read in evidence. Inasmuch as that letter was in no way alluded to in the complaint, and was not alleged therein to be one of the several acknowldgements relied on as implying a new promise to pay the balance apparently due on the note, we think that the letter was clearly inadmissible, as much so as if the plaintiff had offered another note in evidence which was not mentioned in the complaint. But waiving this, and assuming that the letter was admissible, it furnishes no support for the plaintiff's action, for two reasons. 1st. Because, even if that letter should be regarded as constituting such an acknowledgment as would imply a promise to pay the balance appearing to be due on the note, the action on such promise would clearly be barred by the statute of limitations. 2d. Because, as we have seen, J. E. Bradley, as executor, had no power to create a debt against his testator, by acknowledging his liability on the note, which it is not shown that the testator ever made, or ever acknowledged in his lifetime, or ever even knew anything of.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.